IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MOLLY KIRKPATRICK, on Behalf )
of Herself and All Others )
Similarly Situated, )
                              )
              Plaintiff,      )
                              )        1:16CV1088
         v.                   )
                              )
CARDINAL INNOVATIONS          )
HEALTHCARE SOLUTIONS,         )
                              )
              Defendant.      )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This is a proposed collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). Before the court is Plaintiff Molly Kirkpatrick's motion to conditionally certify an FLSA collective (Doc. 26) and the motion of Defendant Cardinal Innovations Healthcare Solutions ("Cardinal") to strike opt-in forms she filed before seeking conditional certification (Doc. 14). For the reasons set forth below, the motion to certify the collective action will be granted, and the motion to strike will be denied.

## I.  BACKGROUND

Plaintiff Kirkpatrick is employed as an Intellectual/Development Disability Care Coordinator ("I/DD coordinator") for Defendant Cardinal. (Doc. 16 at 1, ¶ 1.) Cardinal classifies its I/DD coordinators as exempt from overtime

pay under the FLSA's "learned professional" provision. (Id. at 1-2, ¶ 2.) Kirkpatrick brought this collective action alleging that she and several other I/DD coordinators routinely work over forty hours per week performing tasks that take them outside the learned-professional exemption, without paying them overtime. (Id. at 3, ¶ 9.) Alongside her complaint, Kirkpatrick filed opt-in forms from six similarly situated I/DD coordinators (Doc. 1-2), all of whom asked to join the putative class after "approach[ing] Plaintiffs' counsel as a group, and without any solicitation by counsel, prior to any advertisement being run." (Doc. 19-1 at 2, ¶ 3.) A seventh employee joined the action at a later date. (Doc. 6.) Plaintiffs' counsel has also run advertisements in local newspapers seeking other plaintiffs (e.g., Doc. 14-2) but stated in a sworn declaration that the seven employees whose consent forms have been filed approached counsel without any solicitation and before any advertisements were run. (Doc. 19-1 at 2, ¶ 3.)

Apart from their consent forms, Kirkpatrick has also filed eight almost-identical declarations from herself (Doc. 27-1) and the seven putative opt-in members (Doc. 27-2). The employees declare that they routinely work over forty hours per week without overtime compensation, that they lack the academic and professional credentials that would make them "learned professionals," that they routinely perform tasks that do not require specialized skills or training, and that their positions

2

share the same title, job descriptions, and compensation and billing procedures. (See generally Doc. 27-1; Doc. 27-2.)

Kirkpatrick now moves for conditional certification of an FLSA collective to include all I/DD coordinators who have worked for Cardinal in the course of the last three years. This motion is fully briefed and ready for decision. Cardinal moves to strike the consent forms filed by the seven opt-in employees on the basis that Kirkpatrick has solicited collective members before seeking conditional certification.

## II. ANALYSIS

### A. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f)(2) and 29 U.S.C. § 216(b), Cardinal moves to strike Kirkpatrick's consent form and seven other consent forms she has filed. (Doc. 14; see also Doc. 14-1.) Cardinal's sole ground for this motion is that Kirkpatrick filed these consent forms and solicited collective members – though not those who filed the consent forms Cardinal seeks to strike – before moving for conditional certification under 29 U.S.C. § 216(b). (Doc. 14 at 1-2, ¶¶ 1-4.) It argues that because the court has a "managerial responsibility" to oversee the proper joinder of new plaintiffs to an FLSA action (id. at 7 (quoting Solais v. Vesuvio's II Pizza & Grill, Inc., No. 1:15CV227, 2016 WL 1057038, at *8 (M.D.N.C. Mar. 14, 2016))), Plaintiff's counsel cannot try to gather additional plaintiffs before the

3

collective is conditionally certified. Cardinal further argues
that the proper remedy for a failure to abide by that rule is to
strike from the record those consent forms Plaintiff's counsel has
already received – notwithstanding the fact that they did not arise
from the allegedly improper solicitations - and to "deny joinder"
of the seven opt-in plaintiffs. (Id. at 2.)

On its face, Section 216(b) does not authorize motions to
strike opt-in forms that violate its terms. Chemi v. Champion
Mortg., No. 05-CV-1238, 2006 WL 7353427, at *8 (D.N.J. June 21,
2006) ("[O]n its face, the FLSA is silent regarding the issue
whether consents may be filed before the court addresses and
authorizes notice."). Rule 12(f) allows the court to "strike from
a pleading an insufficient defense or any redundant, immaterial,
impertinent, or scandalous matter," but Rule 7(a), which lists
which documents are "pleadings" for Rule 12(f)'s purposes, Solais,
2016 WL 1057038, at *2, does not include affidavits, declarations,
or consent forms. Cf. JHRG LLC v. StormWatch, Inc., No. 1:09CV919,
2011 WL 3111971, at *5 (M.D.N.C. July 26, 2011) ("Rule 7 . . .
does not define affidavits and declarations as 'pleadings.'")
Nevertheless, the Supreme Court has held that under § 216(b), the
district court has a "managerial responsibly to oversee the joinder
of additional parties" to an FLSA claim. Hoffmann-La Roche Inc.
v. Sperling, 493 U.S. 165, 171 (1989).

Cardinal cites three cases for the proposition that "[s]everal courts have explicitly recognized that striking opt-ins . . . is an appropriate remedy" when plaintiff's counsel solicits opt-ins before conditional certification. (Doc. 22 at 5-6 (citing Woods v. N.Y. Life Ins. Co., 686 F.2d 578, 580 (7th Cir. 1982); Partlow v. Jewish Orphans' Home of S. California, Inc., 645 F.2d 757, 759 (9th Cir. 1981), abrogated by Hoffmann-La Roche Inc., 493 U.S. 165 (1989); Heitmann v. City of Chicago, No. 04C3304, 2004 WL 1718420, at *2 (N.D. Ill. Jul. 30, 2004)).) None of these cases is availing.

Woods was decided before Hoffmann-La Roche and addressed whether a district court has the power to effect notice to an FLSA class. 686 F.2d at 579. The court held that it does, as long as the notice does not emanate from the court itself.[1] In doing so, the court noted that it would not have been proper for plaintiff's counsel to solicit opt-in forms without first telling the defendant of his intent to do so and giving it the opportunity "to verify the accuracy of the notice and, if he wished, to move for an order amending the notice or limiting its distribution in an appropriate manner." Id. at 580. Here, Cardinal does not argue that Plaintiff's counsel did not reach out to it – its sole contention

---

[1] Of course, Hoffmann-La Roche obviated that question. 493 U.S. at 171 (holding that the district court has a "managerial responsibly to oversee the joinder of additional parties" to an FLSA claim).

5

is that the opt-in forms should not have been filed until after conditional certification was granted.

The court in Heitmann required the plaintiff to amend his consent forms because he failed to notify the defendant of their distribution. 2004 WL 1718420, at *2. But that was because of the Seventh Circuit's recognition in Woods that "it is improper for the plaintiff to issue notice and consent forms 'without first communicating to the defendant's counsel his intention to do so.'" Heitmann, 2004 WL 1718420, at *2 (quoting Woods, 686 F.2d at 580). The court noted that the plaintiff's "ignorance of this requirement is somewhat understandable" given that it has no express basis in a statute or rule. Id. "Nevertheless," the court held, "the rule is more than twenty years old now, and Plaintiff should have followed it." Id. Of course, there is no such rule in the Fourth Circuit. Even if there were, Cardinal does not claim that Plaintiff failed to notify it of the opt-ins, so she has not violated the Seventh Circuit rule. See Woods, 686 F.2d at 580 ("Before this suit was filed, Woods had sent invitations to other members of the class to join with him, and New York Life does not challenge his right to do this."). And even if she had, it does not necessarily follow from the Seventh Circuit's rule that the proper remedy for its violation is to strike offending opt-in forms. Even the Heitmann court allowed the plaintiffs to amend their opt-in forms. 2004 WL 1718420, at *2.

6

The question in Partlow, under "very peculiar factual circumstances," was whether due process concerns arising from the FLSA's opt-in rules required the district court to notify plaintiffs who filed FLSA consent forms when they were later determined to be invalid so those plaintiffs could elect whether to continue in the lawsuit. 645 F.2d at 759-60. Like Woods, Partlow was decided before Hoffmann-La Roche. The Ninth Circuit noted in dicta that "most courts that have interpreted the FLSA . . . have held that neither the named plaintiffs, their counsel, nor the court have the power to provide notice to FLSA class members," 645 F.2d at 759, a statement of law abrogated by Hoffmann-La Roche. The court's statement a few sentences later that "named plaintiffs' counsel had no power to solicit the class members," id., appears to be a restatement of that now-abrogated standard. Even if Partlow were good law, the relevant language in Partlow applies only to class members who were solicited improperly. 645 F.2d at 759 ("[U]nder the law of this circuit, named plaintiffs' counsel had no power to solicit the class members. The district court quite properly found that the resulting 'consents' were ineffective." (citation omitted)). Here, the seven opt-in forms filed alongside the complaint came from employees who "approached Plaintiffs' counsel as a group, and without any solicitation by counsel, prior to any advertisement being run." (Doc. 19-1 at 2, ¶ 3.)

Cardinal has identified only two cases in which courts have struck pre-certification opt-in forms on the ground that they were filed before conditional certification was granted. (Doc. 14 at 6 (citing <u>Melendez Cintron v. Hershey Puerto Rico, Inc.</u>, 363 F. Supp. 2d 10, 17 (D.P.R. 2005)); <u>id.</u> at 8-9 (citing <u>Chemi</u>, No. 05-2006 WL 7353427, at *9).) The notable distinction between those cases and the present one is that in them, as in <u>Partlow</u>, the opt-in forms struck were obtained through a pre-certification solicitation by the plaintiff. <u>Melendez Cintron</u>, 363 F. Supp. 2d at 11 (stating that the objectionable opt-in forms were obtained through a "solicitous letter" sent by plaintiff's counsel);[2] <u>Chemi</u>, 2006 WL 7353427, at *8 ("There is no indication that opt-in plaintiffs became aware of the pending lawsuit except through the efforts of counsel to publicize it." (footnote omitted)).[3]

---

[2] <u>Melendez Cintron</u> does not apply to this case for at least one other reason. It held that to justify notice to the class, a plaintiff can make a showing based solely on allegations in the pleadings. 363 F. Supp. 2d at 16 ("Plaintiffs need simply allege that the putative class members were, together, the victims of a single decision, policy, and/or plan that violated the FLSA in order to meet this burden." (citations omitted); <u>id.</u> at 15-16 ("This initial ruling is 'usually based only on the pleadings and any affidavits that have been submitted' during the first stages of the case proceedings." (citations omitted)). But conditional certification determinations are not restricted to allegations contained in pleadings. <u>E.g.</u>, <u>Beasley v. Custom Commc'ns, Inc.</u>, No. 5:15-CV-583-F, 2016 WL 5468255, at *4 (E.D.N.C. Sept. 28, 2016) ("The court's determination of whether a plaintiff made the proper showing is based on 'substantial allegations' in the pleadings and any submitted affidavits or declarations." (citation omitted)).

[3] <u>Chemi</u> applied the Fourth Circuit's burden-of-production standard but relied solely on authorities this court has already rejected. Acknowledging "the lack of statutory guidance as to when consents may be filed," the <u>Chemi</u> court cited the same three cases Defendant cites

Here, the seven opt-ins filed alongside the complaint came from employees who "approached Plaintiffs' counsel as a group, and without any solicitation by counsel, prior to any advertisement being run." (Doc. 19-1 at 2, ¶ 3.) Cardinal acknowledges as much (Doc. 22 at 4 ("Plaintiff notes that this lawsuit was filed on August 28, 2016, and plaintiff did not begin running advertisements in local newspaper until on or about September 14, 2016 . . . .")) but insinuates either that (a) Plaintiff's counsel was not being candid in her declaration when she stated that she didn't solicit the opt-in forms (id. (questioning "how these other opt-in Plaintiffs learned about the case, how they learned about whom to contact to opt-in, and what information they were provided")); or (b) Plaintiff – and the seven employees who have opted into the litigation - should be punished merely for counsel's decision to run advertisements before conditional certification and that the proper punishment for those advertisements is to strike otherwise-valid opt-in forms.

In response to Cardinal's arguments, Kirkpatrick cites a host of cases in which courts have granted conditional certification to

---

in its reply brief – Woods, Partlow, and Heitmann – for the proposition that striking opt-ins before conditional certification is "an appropriate remedy" when plaintiffs' counsel "embark in direct solicitation efforts to obtain consents without the input or participation of defense counsel or the court." 2006 WL 7353427, at *8. As discussed above, those three cases do not apply here and cannot fairly be said to stand for that proposition. The Chemi court also relied on Melendez Cintron, which does not apply squarely to this case for the reasons stated above.

pre-certification opt-in plaintiffs. (Doc. 19 at 6-7.) See also Hoffmann-La Roche, 493 U.S. at 169 (declining to overturn the district court's decision not to strike pre-certification opt-in forms). In none of these cases did a defendant actually move to strike the resultant opt-in forms.

The court also finds persuasive Kirkpatrick's argument that allowing pre-certification opt-ins helps her, as the named Plaintiff, achieve the threshold showing that she is "similarly situated" and notes that some courts rely on opt-in forms to find that the showing was made (id. at 7-8 (citing Beasley v. Custom Commc'ns, Inc, No. 5:15-CV-583-F, 2016 WL 5468255, at *3 (E.D.N.C. Sept. 28, 2016); Long v. CPI Sec. Sys., Inc., 292 F.R.D. 296, 297 (W.D.N.C. 2013))) and that the Eleventh Circuit even requires district courts to "satisfy [themselves] that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated'" (id. at 8; Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir. 2008)). Kirkpatrick also notes that FLSA opt-in plaintiffs are subject to the statute of limitations and that the limitations period for FLSA class actions run for each plaintiff until she opts into the lawsuit. (Id. at 6 (citations omitted).) From this, Kirkpatrick urges that it would not be sensible to prevent plaintiffs from opting in before conditional certification. (Id.)

In conclusion, there is no evidence that Kirkpatrick's

counsel solicited the opt-in forms in question, so striking them
would be tantamount to holding that all pre-certification opt-in
forms per se violate the FLSA.  It would also require the court to
hold that the proper remedy for such a violation is to strike
unsolicited opt-in forms.  There is no basis for either holding in
the FLSA, the Federal Rules of Civil Procedure, or the case law.
It is true that in Hoffmann-La Roche, the Supreme Court read into
§ 216(b) a managerial responsibility that the statute's express
language does not grant the district courts.  To the extent that
principle has been construed to empower district courts to strike
opt-in forms that plaintiff's counsel solicits without court
approval or notice to the defendant, that scenario is not presented
here.

    Cardinal's motion to strike will therefore be denied.

    **B.    Motion for Conditional Certification**

    Employees may sue employers for violations of the FLSA as a
class or "collective."  29 U.S.C. § 216(b).  To become part of the
litigation, each "similarly situated" employee must file her
written consent with the court.  Id.  Employees are "similarly
situated" when they "raise a similar legal issue as to coverage,
exemption, or nonpayment o[f] minimum wages or overtime arising
from at least a manageably similar factual setting with respect to
their job requirements and pay provisions."  Solais, 2016 WL

1057038, at *5 (quoting <u>McLaurin v. Prestage Foods, Inc.</u>, 271 F.R.D. 465, 469 (E.D.N.C. 2010)) (alteration in original).

FLSA class certification takes place in two stages.[4]  The first stage – applicable here - is conditional certification, during which the court determines whether the employees' claims are similar enough to merit the distribution of court-approved notice to possible class members. <u>Solais</u>, 2016 WL 1057038, at *5; <u>see also</u> <u>Hoffmann-La Roche</u>, 493 U.S. at 169 ("[D]istrict courts have discretion, in appropriate cases, to implement [§ 216(b)] by facilitating notice to potential plaintiffs.").  Conditional certification is appropriate when it would serve judicial efficiency, <u>Hoffmann-La Roche</u>, 493 U.S. at 169, and the court must be mindful that granting conditional certification expands the scope of the litigation and begins a process of class-wide discovery, <u>see, e.g.</u>, <u>Blaney v. Charlotte-Mecklenburg Hosp. Auth.</u>, No. 3:10-CV-592-FDW-DSC, 2011 WL 4351631, at *10 (W.D.N.C. Sept. 16, 2011).  The standard for conditional certification is "fairly lenient," but it is not a "rubber stamp." <u>Adams v. Citicorp Credit Servs., Inc.</u>, 93 F. Supp. 3d 441, 453 (M.D.N.C. 2015) (citation omitted).  While parties generally "have minimal evidence at this point in the proceedings, . . . [m]ere allegations will not

---

[4]  The second, not at issue here, is similar to a Rule 23 class certification.  It is at this second stage that a deeper inquiry into the merits is conducted.

suffice; some factual evidence is necessary." Id. (citations omitted) (alteration in original). That evidence must tend to show that there exists a "common policy, scheme, or plan" that violates the FLSA, but it "need not . . . enable the court to determine conclusively whether a class of similarly situated plaintiffs exists, and it need not include evidence that the company has a formal policy" that violates the FLSA. Id. (citation omitted). At this stage, "the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." Solais, 2016 WL 1057038, at *6 (quoting Adams, 93 F. Supp. 3d at 454). "The fact that an employer classifies all or most of a particular class of employees as exempt does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties." In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009) (citation omitted).

Cardinal opposes conditional certification primarily on two grounds. First, it argues that Kirkpatrick has failed to "demonstrate the existence of a common unlawful policy necessary to support a collective action." (Doc. 43 at 18.) Much of Cardinal's contention on this issue amounts to a merits argument that Cardinal's exemption policy complies with the FLSA. (See, e.g., Doc.43 at 18 ("There is nothing unlawful about an employer not paying overtime compensation to exempt employees."); id. at 20

13

Case 1:16-cv-01088-TDS-LPA   Document 45   Filed 09/01/17   Page 13 of 23

("Plaintiff must identify an unlawful policy to which she and the other putative class members were subjected.").) This argument is misplaced. At this stage, Plaintiff need not demonstrate conclusively that the policy is unlawful. Solais, 2016 WL 1057038, at *6 (stating that the court needn't "decide substantive issues on the merits" at the conditional certification stage (quoting Adams, 93 F. Supp. 3d at 454)).

Cardinal is, of course, correct that "'mere allegations' are not sufficient to make a preliminary factual showing that a similarly situated group of potential plaintiffs exists." Slavinski v. Columbia Ass'n, Inc., No. CIV. CCB-08-890, 2011 WL 2119231, at *2 (D. Md. May 27, 2011) (citing Quinteros v. Sparkle Cleaning, Inc., 532 F. Supp.2d 762, 771-772 (D. Md. 2008)). Though Cardinal devotes close to two pages of its brief to establishing this simple, undisputed proposition, Kirkpatrick adequately meets this standard.

Citing Slavinski, Cardinal claims that Plaintiff has not offered any factual support for her contention that the I/DD coordinators were misclassified. (Doc. 43 at 20.) This is incorrect. As Cardinal readily admits, Kirkpatrick has submitted eight declarations from I/DD coordinators in support of the motion. (Doc. 43 at 20; Doc. 27-1; Doc. 27-2.) Each declaration contains detailed factual assertions about the mechanics of the I/DD position and the coordinators' duties and limitations. (See, e.g.,

14

Doc. 27-2 at 1-4, ¶¶ 3, 5, 6-8, 12, 18.)  Cardinal makes much of
the fact that the forms are similar if not identical, except for
the blanks for years of employment and hours worked per week.
(Doc. 43 at 20.)  It seems to imply that the fact that the
statements are identical should lead the court to doubt their
effectiveness or even truthfulness.  (Doc. 43 at 21 ("These
statements are little more than conclusory allegations that add no
factual support to Plaintiff's argument that she was
misclassified.").)  Declarations are, of course, factual support.
They are not pleadings or mere allegations; they are sworn
statements and part of the factual record.  Cardinal's attacks on
the declarations are, in the end, challenges to their credibility
and thus are factual matters the court need not resolve now.
Solais, 2016 WL 1057038, at *6 (holding that the court need not
"resolve factual disputes . . . or make credibility
determinations" at this stage).

Similarly, Cardinal questions the truthfulness of two
particular declarations, asserting that the academic credentials
of Kirkpatrick and Kelly Soule, another I/DD coordinator, belie
their claims that they "had no advance knowledge in a field of
science or learning requiring specialized instruction that was
necessary to perform [the] job."  (Doc. 43 at 21.)  In support of
this line of argument, Cardinal notes that the position's
educational requirements are imposed by statute and therefore

cannot be "ignored" by an employer such as Cardinal. (Doc. 43 at 22-23.) It also points out that Soule purports to have a Masters in Social Work, which contradicts Kirkpatrick's claim. (Doc. 27-2 at 15.) There does appear to be a fairly wide range of acceptable educational and experiential requirements for the job position. (E.g., Doc. 27-3 at 7.) For example, Kirkpatrick's primary education appears to be in criminal justice, with some vocational rehabilitation evaluation training at Auburn University. (Doc. 43-1 at 9.) For now, however, these are factual issues that need not be decided at this stage. Solais, 2016 WL 1057038, at *6 (holding that the court need not "resolve factual disputes . . . or make credibility determinations" at this stage).

The cases Cardinal cites for its argument are distinguishable. For example, in Moore v. PNC Bank, N.A., the plaintiff was a decided aberration compared to others who worked in her position. No. 2:12-CV-1135, 2013 WL 2338251 (W.D. Pa. May 29, 2013). She alleged that she did not perform the "essential functions" of her position and instead "spent the overwhelming majority of her time on nonexempt activities that a platform banker normally performs, namely customer service duties, without receiving overtime compensation." Id. at *2. She provided no supporting declaration of any similarly situated employees, and there were on the record "sworn statements of current and former ABMs [the position Moore occupied] . . . filed by [the Defendant]

16

to rebut her claim that ABMs perform non-exempt tasks." Id. at *4. The court rejected Moore's contention that it should disregard those declarations. Id. Here, while Cardinal has filed its own declaration describing the job duties in general, there is no evidence that Kirkpatrick is an aberration.

Second, Cardinal argues that the learned-professional exemption requires an "individualized inquiry" into each plaintiff's job responsibilities and qualifications, putting the exemption "at odds with" class certification. (Doc. 43 at 23-25.) Cardinal ignores the litany of cases granting conditional certification to classes on theories of the misapplication of the learned-professional exemption. E.g., Kress v. PricewaterhouseCoopers, LLP, 263 F.R.D. 623, 630 (E.D. Cal. 2009) (granting conditional certification to a class organized on a learned-professional theory and noting, "Here, while each employee's claim will turn on that employee's job duties, plaintiffs argue that PwC's training, PwC's audit methodology, and the applicable professional standards together ensure that all Attest Associate's job duties are similar in pertinent regards. This argument is supported by some evidence."); In re RBC Dain Rauscher Overtime Litig., 703 F. Supp. 2d 910, 965 (D. Minn. 2010) (granting conditional certification to a class organized on a learned-professional theory and noting, "For purposes of conditional certification of the collective action, the Court

17

finds that ISs and JISs in the Fixed Income Capital Markets Team are similarly situated because they have similar duties and responsibilities and because they have a similar system of compensation."); Dillon v. Jackson Home Care Servs., LLC, No. 116CV01300STA-egb, 2017 WL 3446293, at *4 (W.D. Tenn. Aug. 10, 2017) (granting conditional certification to a class organized on a learned-professional theory and noting, "The Court finds it unnecessary to reach these fact-bound determinations at the conditional certification stage."); Pippins v. KPMG LLP, No. 11 CIV. 037(CM)(JLC), 2012 WL 19379, at *1 (S.D.N.Y. Jan. 3, 2012) (granting conditional certification to a class organized on a learned-professional theory).

Alongside that argument, Cardinal posits that Kirkpatrick is not similarly situated to her coworkers because she "has failed to show that all I/DD Care Coordinators exercise the same duties and responsibilities." (Doc. 43 at 25.) Of course, as discussed above, Kirkpatrick need not make such a showing at this stage. Kirkpatrick has offered evidence that I/DD coordinators have the same job descriptions and titles and work an average of over forty hours per week without overtime compensation. (See generally Doc. 27-2.) There is also ample evidence that all I/DD coordinators were subject to the same compensation and billing requirements. (E.g., Doc. 27-2 at 4, ¶ 16.)

Cardinal also contends that Kirkpatrick "fails to account for" several variations among different I/DD coordinators, including their geographic locations and their skills and expertise. (Doc. 43 at 26-27.) Notably, Cardinal does admit in its answer that all its I/DD coordinators are classified as exempt under the learned-professional exemption (Doc. 23 at 9, ¶ 31) and that they all have the same job descriptions, with identical qualifications and responsibilities (Doc. 23 at 7-8, ¶ 24). Regardless, as with most of Cardinal's arguments, these "delve[] too deeply into the merits of" this case, requiring the court to make factual determinations reserved for later stages of litigation. Essame v. SSC Laurel Operating Co. LLC, 847 F. Supp. 2d 821, 826 (D. Md. 2012); see also De Luna-Guerrero v. N. Carolina Grower's Ass'n, Inc., 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) ("In FLSA actions, persons who are similarly situated to the plaintiffs must raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical." (citation omitted)); Rehberg v. Flowers Foods, Inc., No. 3:12CV596, 2013 WL 1190290, at *2 (W.D.N.C. Mar. 22, 2013) (granting conditional certification on the sole bases that "(1) plaintiffs have the same job duties; and (2) are subject to

19

the same policies and standards determining their compensation and performance requirements").

For all these reasons, Kirkpatrick's motion for conditional class certification will be granted.

### C.   Alterations to Class Notice

Cardinal asks the court to make six changes to Kirkpatrick's opt-in form.  "The Court has the power and duty to ensure that the notice is fair and accurate, but should only alter a plaintiff's proposed Notice when such an alteration is necessary." Harris v. Pathways Cmty. Behavioral Healthcare, Inc., No. 10-0789-CV-W-SOW, 2012 WL 1906444, at *3 (W.D. Mo. May 25, 2012) (citation omitted).

First, Cardinal asks the court to include "a statement that the Court has made no determination on the merits of Plaintiff's claims." (Doc. 43 at 28.)  The proposed notice already includes this language, almost verbatim.  (Doc. 27-4 at 1.)

Second, Cardinal asks the court to expand on the proposal's statement that "Defendant denies any wrongdoing, asserts certain affirmative defenses, and denies it owes any overtime pay or liquidated damages" (Doc. 27-4 at 2) to give a more thorough overview of Cardinal's contention on the merits.  (Doc. 43 at 28.) This is unnecessary to ensure the notice's fairness and accuracy; the language in Kirkpatrick's proposal is in fact broader and clearer than Cardinal's modification.

20

Third, Cardinal asks the court to allow class members only forty-five days, instead of ninety, to join the class. (Doc. 43 at 29.) Cardinal's argument that potential plaintiffs "have already had well over two hundred days in which to file their consent" (id.) assumes that potential plaintiffs already know of the lawsuit. Cardinal offers no evidence of any potential class member who knows of the suit and has chosen not to opt in, and ninety days is no longer than necessary to gather the class.

Fourth, Cardinal argues that the notice should explain that "opt-ins may be deposed and subject to obligations such as fees and costs" and that "opt-ins can choose other counsel." (Doc. 43 at 29.) Cardinal does not offer any legal or factual argument in support of this contention. Cf. Landress v. Tier One Solar LLC, No. 1:15CV354, 2017 WL 1066648, at *2 n.7 (M.D.N.C. Mar. 21, 2017) (noting that where a party fails to develop an issue in its brief, courts have deemed the issue waived (citing Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n.4 (4th Cir. 2012))). It is not apparent that the first statement about costs and fees is true; in any event, the court will not require that either statement be made.

Fifth, Cardinal asks the court to include the names and contact information for Cardinal's attorneys, again with no factual or legal support. Even if Cardinal had developed the point, including this information risks confusing potential class

members.  *See* <u>Ahle v. Veracity Research Co.</u>, No. CIV.09-00042ADM/RLE, 2009 WL 3103852, at *6 (D. Minn. Sept. 23, 2009).

Finally, Cardinal asks the court to change the consent form's statement that

> I . . . consent to be a party plaintiff in an action to recover unpaid overtime, damages, and attorneys' fees

to read instead,

> I . . . consent to be a party plaintiff in an action seeking to establish that Cardinal did not properly classify I/DD Care Coordinators as learned professionals.  I seek to recover potential unpaid overtime, damages, and attorneys' fees, and to require Cardinal to classify my position as non-exempt, requiring me to provide Cardinal with hourly timecards for my hours worked.

In support of this addition, Cardinal argues that the existing language "sounds as if the recovery of unpaid overtime, damages, and attorneys' fees has already been determined in Plaintiff's favor." (Doc. 43 at 29.)  When read in context and alongside the opt-in notice, which already contains a disclaimer that the court has not ruled on the merits of Plaintiff's claims, this concern is remote.  Furthermore, to a layperson, Cardinal's language would be unclear and obfuscating.  The court therefore declines to alter the language.

### III. CONCLUSION

For the reasons noted,

IT IS THEREFORE ORDERED that Cardinal's motion to strike (Doc. 14) is DENIED.

IT IS FURTHER ORDERED that Kirkpatrick's motion for conditional certification (Doc. 26) is GRANTED and that notice is approved to the FLSA collective defined as:

> All persons who are, have been, or will be employed by Cardinal Innovations Healthcare Solutions as I/DD Care Coordinators within the State of North Carolina at any time within the last three years.

IT IS FURTHER ORDERED that insofar as Cardinal has moved to modify the proposed class notice (Doc. 27-4) and opt-in form (Doc. 27-5), the motion is DENIED.

                                        /s/   Thomas D. Schroeder
                                        United States District Judge

September 1, 2017