# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### WINSTON SALEM DIVISION

| | | |
|---|---|---|
| **Molly Kirkpatrick,** on Behalf of Herself and All Others Similarly Situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:16-CV-01088-TDS-LPA |
| | ) | |
| vs. | ) ) | |
| **Cardinal Innovations Healthcare Solutions,** | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

---

## SETTLEMENT AGREEMENT

---

THIS SETTLEMENT AGREEMENT, along with all exhibits (collectively, the "Agreement" or "Settlement"), resolves the above-captioned matter ("the Lawsuit") and is entered into between the Named Plaintiff Molly Kirkpatrick ("Plaintiff"), on the one hand, who represents the individuals who submitted consent to join forms in this litigation ("FLSA Opt Ins" or the "Opt-in Plaintiffs"), and Defendant Cardinal Innovations Healthcare Solutions ("Defendant" or "Cardinal") on the other hand.

Page 1 of 20

## FACTUAL BACKGROUND AND RECITALS

1.      Plaintiff filed the Lawsuit in the United States District Court, Middle District of North Carolina, on August 28, 2016, and Plaintiff filed an Amended Complaint, asserting substantially the same claims, on September 20, 2016. (ECF Nos. 1, 9.)

2.      Defendant filed a Motion to Dismiss on October 6, 2016 (ECF Nos. 12–13), and Plaintiff subsequently filed a Second Amended Complaint on October 27, 2016, again asserting substantially the same claims, (ECF No. 16).

3.      Defendant filed its Answer, also asserting several affirmative defenses, on November 28, 2016. (ECF No. 23.)

4.      On November 30, 2016, Plaintiff moved for certification of a collective action pursuant to § 16(b) of the Fair Labor Standards Act ("FLSA"). (ECF Nos. 26–27.) After conducting limited discovery, Defendant filed its opposition to collective action certification on May 25, 2017. (ECF No. 43.) And, on June 7, 2017, Plaintiff filed her reply in support of certification. (ECF No. 44.)

5.      The statute of limitations for Opt-in Plaintiffs' claims was tolled for the time period December 27, 2016 through May 25, 2017 (149 days or 21.3 weeks), pursuant to the Court's decision to allow limited pre-certification discovery and the parties' stipulation to toll the statute of limitations during that time. (ECF Nos. 36, 42.)

6.      The Court granted Plaintiff's collective action certification motion on September 1, 2017. (ECF No. 31.)

7.     Defendant filed its Amended Answer, again asserting several affirmative defenses, on September 12, 2017. (ECF No. 47.)

8.     Plaintiff utilized a third-party administrator to send notice to the certified collective class of "All persons who are, have been, or will be employed by Cardinal Innovations Healthcare Solutions as I/DD Care Coordinators within the State of North Carolina at any time within the last three years."

9.     A total of approximately 68 I/DD Care Coordinators, including Plaintiff Molly Kirkpatrick, submitted timely consents to join this litigation.

10.    Over the next 8 months, the parties negotiated a representative discovery stipulation (ECF No. 68), served written discovery requests, and exchanged thousands of pages of documents.

11.    During this same time, the parties engaged in comprehensive negotiations regarding ESI custodians and search parameters, which ultimately resulted in a Joint Stipulation Regarding ESI Discovery (ECF No. 72) and required a modification of existing scheduling order deadlines. (ECF Text Order, July 3, 2018.)

12.    Prior to incurring the cost of completing ESI searches and production, the parties agreed to mediate this case in an attempt to reach a resolution on all claims. In connection with the impending mediation, Defendant produced certain information regarding each Opt-in Plaintiff's salary, work weeks, and weeks during which no work was

Page 3 of 20

performed, sufficient to enable Plaintiff and her counsel to fully and fairly value Plaintiff's and the Opt-in Plaintiffs' claims.

13. Plaintiff and her counsel also conducted an investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit, including interviewing Opt-in Plaintiffs regarding their work hours, education and training, and job duties.

14. On August 3, 2018, the parties participated in a full-day mediation with Kenneth P. Carlson, Jr., a state-certified mediator with vast experience in complex employment law cases, including wage and hour disputes, in Charlotte, North Carolina, which resulted in the following Settlement Agreement.

15. In light of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, Plaintiff and her counsel believe that this Settlement Agreement is in the best interests of Plaintiff and each of the Opt-in Plaintiffs and represents a fair, reasonable, and adequate resolution of the claims in the Lawsuit.

16. Defendant denies and continues to deny all of Plaintiff's allegations in the Lawsuit. Nonetheless, without admitting or conceding any liability or responsibility for damages, Defendant has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing litigation.

## TERMS OF THE AGREEMENT

In consideration of the mutual promises and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **Definitions Used in this Agreement**.

      A.    **"Administrative Costs"** means the amount to be paid from the Gross Settlement Fund to a third-party settlement administrator for all costs in connection with consummating the terms of this Agreement as set forth in paragraph 6.

      B.    **"Attorneys' Fees and Costs"** means the amount paid from the Gross Settlement Fund to Plaintiffs' Counsel pursuant to paragraph 2(D).

      C.    **"Defendant" or "Cardinal"** means Cardinal Innovations Healthcare Solutions, named party to this Lawsuit.

      D.    **"Effective Date"** means the date the Court enters an Order approving this Settlement and/or dismissing the Lawsuit.

      E.    **"FLSA Collective Members"** means the 68 FLSA Collective Members who have filed consents to join this Lawsuit.

      F.    **"FLSA Workweeks"** means weeks each FLSA Collective Member worked during the period beginning three-years preceding their opt-in date, plus 21.3 weeks to account for the parties' tolling agreement, and ending on August 3, 2018.

      G.    **"Gross Settlement Fund"** means the amount of $748,527.08. This payment will cover the settlement allocations to Plaintiff and all FLSA Collective Members, attorneys' fees and costs, service payments, interest, liquidated damages and Administrative Costs (as defined above), such that Defendant's settlement liability,

Page 5 of 20

DocuSign Envelope ID: ED9CE899-33EF-400C-8A18-E7D07B18EBA8

**excluding** the employer's share of payroll taxes, shall not exceed the combined sum of $748,527.08.

      H.      **"Named Plaintiff"** means plaintiff Molly Kirkpatrick.

      I.      **"Net Settlement Fund"** means the Gross Settlement Fund, less Administrative Costs, Service Payment, and Attorneys' Fees and Costs.

      J.      **"Plaintiffs' Counsel"** means Davis George Mook LLC and Strianese Huckert, LLP.

      K.      **"Released Claims"** means any and all claims against the Released Parties related to the subject matter of the Lawsuit, that were or could have been asserted in the Lawsuit based on putative violations of any federal, state or local laws pertaining to overtime wages, meal or rest periods, and any other purported Fair Labor Standards Act violation, based on events that occurred or are alleged to have occurred while each FLSA Collective Member served as a I/DD Care Coordinator from August 28, 2013 through the Effective Date.

      L.      **"Released Parties"** means Defendant Cardinal Innovations Healthcare Solutions, and each of its current and former officers, directors, agents, and representatives.

      M.      **"Service Payment"** means the amount paid to Named Plaintiff from the Gross Settlement Fund, pursuant to paragraph 2(C).

N.  **"Spreadsheet"** means the spreadsheet reflecting the FLSA Workweeks and average weekly salary for each FLSA Collective Member, attached as an exhibit to this Settlement Agreement.

2.  **Settlement Fund and Allocation**.

A.  Settlement Fund Allocation.  Each FLSA Collective Member shall be allocated a proportionate share of the Net Settlement Fund (the "FLSA Collective Member Fund").

B.  Allocation of the FLSA Collective Member Fund.

(i)  Each FLSA Collective Member shall be allocated the same minimum dollar amount of $250.00 from the FLSA Collective Member Fund ("Minimum FLSA Collective Member Allocation") plus their "Individual FLSA Collective Member Share" (together, the "Individual FLSA Collective Member Allocation").

(ii)  The FLSA Collective Member Fund, less the sum of each FLSA Collective Member's "Minimum FLSA Class Member Allocation," shall equal the "Net FLSA Collective Member Fund".

(iii)  The "Individual FLSA Collective Member Share" of the "Net FLSA Collective Member Fund" shall be determined using the following formula:

1. **Calculate Each FLSA Collective Member's Points**.  For each FLSA Collective Member, multiply the Member's average weekly salary reflected in the Spreadsheet by the total number of his or her FLSA Workweeks.  The result is the "FLSA Collective Member's Points."

Page 7 of 20

2. **Calculate "Net Share Per Point."** Add up each of the "FLSA Collective Member's Points" to determine the "Total FLSA Collective Member Points." Divide the Net FLSA Collective Member Fund by the "Total FLSA Collective Member Points." The result is the "Net Share Per Point."

3. **Calculate Each FLSA Collective Member's Share.** For each FLSA Collective Member, multiply the "FLSA Collective Member's Points" by the "Net Share Per Point" to determine the "Individual FLSA Collective Member Share."

C.    <u>Service Payment to Named Plaintiff</u>. Subject to Court Approval, Named Plaintiff Molly Kirkpatrick will receive a service payment in the amount of $10,000.00 from the Gross Settlement Fund. This service payment is in recognition of efforts to pursue the claims raised in this Lawsuit on behalf of the FLSA Collective Members, including providing information and otherwise assisting Plaintiffs' Counsel with the prosecution of the litigation. The service payment will be made at the same time and in addition to the payment allocated from the Net Settlement Fund. Defendant will not oppose (or have any responsibility for) Plaintiff's request for the service payment before the Court or the amount thereof, so long as it does not increase the final amount Defendant pays in settlement. If the Court denies or reduces Plaintiff's request for the service payment, that will not invalidate this Agreement.

D.    Any amounts allocated as service payments under this Agreement, but not approved by the Court, shall be added to the Net Settlement Amount, to be proportionally distributed to the FLSA Collective Members.

Page 8 of 20

      E.    <u>Attorneys' Fees and Costs</u>. Subject to Court Approval, Plaintiffs' Counsel will receive $250,000.00 from the Gross Settlement Fund as attorneys' fees, plus costs and expenses. Any amounts allocated as attorneys' fees and costs under this paragraph, but not approved by the Court, shall be added to the Net Settlement Fund. Defendant will not oppose (or have any responsibility for) Plaintiff's request for attorney fees or expenses before the Court or the amounts thereof, so long as they do not increase the final amount Defendant pays in settlement. If the Court denies or reduces Plaintiff's request, that will not invalidate this Agreement.

      F.    Any amounts paid under this Agreement will not be considered for benefit plan credit or compensation programs (401(k), pension plans, etc.).

**3.**    **Release**. In accordance with the terms of this Agreement, the Named Plaintiff and the FLSA Collective Members (collectively, the "Releasing Parties") shall be deemed to have irrevocably and unconditionally released and discharged the Released Parties with respect to the Released Claims upon the Effective Date.

**4.**    **Additional Terms**.

      A.    Releasing Parties will maintain the confidentiality of the amount of Individual FLSA Collective Member Allocation they receive under this Agreement except for disclosure to spouses, other Releasing Parties, accountants, attorneys, or as required by law. If any of the Releasing Parties are requested to disclose the amount of the Individual FLSA Collective Member Allocation they receive under this Agreement by legal process

in an unrelated civil, criminal, administrative, or regulatory proceeding, the Releasing Party must give prompt notice to Cardinal before disclosure so that Cardinal may have an opportunity to defend against such legal process. Releasing Parties understand that this confidentiality obligation prohibits them from commenting on the amount of Individual FLSA Collective Member Allocation they receive under this Agreement on social media or through the press.

B.      Plaintiffs' Counsel will not publicize the existence and the terms of this Agreement on their websites, social media, or any other publications.

C.      Releasing Parties who are no longer employed by Defendant as of the Effective Date will not disparage Cardinal to any other person, including on social media or through the press. Releasing Parties who are employed by Defendant as of the Effective Date agree they will not disparage Cardinal to any other person, including on social media or through the press; however, this provision excludes any complaints about the terms and conditions of their employment.

D.      Releasing Parties acknowledge that Defendant will continue to classify the I/DD Care Coordinator position as exempt.

E.      Within six months of the Effective Date, Defendant will attain a headcount of at least 143 I/DD Care Coordinators and will maintain that level barring material changes to funding, regulatory or statutory scheme (including the Innovations Waiver's terms), or changes in Cardinal's finances or operations. A temporary reduction

under 143 I/DD Care Coordinators for 60 days or less will not create a breach of this Agreement.

        F.      Defendant will pay the mediator's fees and costs.

        G.      Releasing Parties acknowledge that Defendant, in its sole discretion, may provide a benefit to those I/DD Care Coordinators who are not FLSA Collective Members and that Releasing Parties will not be eligible to receive any such monetary or other benefit. Provided, however, that the monetary value of any benefit given to any I/DD Care Coordinator who is not an FLSA Collective Member shall not exceed the lowest Individual FLSA Collective Member Share paid under this Agreement to any current I/DD Care Coordinator who is an FLSA Collective Member.

        H.      In accordance with N.C. Gen. Stat. § 159-28, this instrument has been pre-audited in the manner required by the Local Government Budget and Fiscal Control Act.

**5.**      **Approval of Settlement/Dismissal of the Lawsuit**.

        A.      <u>Court Approval/Dismissal of Settlement</u>. Within thirty days of the execution of this Agreement, Plaintiff will file a settlement approval motion with the Court, along with a motion to approve the Service Payments and the attorneys' fees and costs to Plaintiffs' Counsels as described in paragraph 2. If the Court does not enter an Approval/Dismissal Order, or decides to do so only with material modifications to the terms of this Agreement, then this Agreement shall become null and void, unless the Parties agree in writing to modify this Agreement and the Court approves this Agreement as

DocuSign Envelope ID: ED9CE899-33EF-400C-8A18-E7D07B18EBA8

modified. Notwithstanding the foregoing, if the Court approves the gross amount of the Settlement Fund but determines there should be a reallocation of the FLSA Collective Member Fund, a reduction of the Service Payment, or a reduction of the amount paid to Plaintiffs' Counsel, the Agreement as so modified and approved by the Court shall remain fully binding on the Parties. The parties agree that "material modifications" as used in this subparagraph include (without limitation) modifications the Settlement Fund Allocation of paragraph 2.B., the Gross Settlement Fund Amount 1.G., and/or the Additional Terms of paragraph 4.

        B.    <u>Dismissal of Action with Prejudice</u>. Subject to and conditioned upon the Court's Approval/Dismissal of the Settlement in accordance with the terms and conditions of this Agreement, Plaintiffs agree that the Lawsuit shall be dismissed with prejudice, with all Parties responsible for their own costs and attorneys' fees, except as otherwise specifically provided in this Agreement.

**6.**    **<u>Settlement Administration and Payments</u>.**

        A.    <u>Settlement Administrator.</u> The Settlement will be administered by a third-party administrator, Analytics LLC ("Settlement Administrator"). Reasonable fees and expenses of the Settlement Administrator shall be deducted from the Gross Settlement Fund. The Settlement Administrator shall be required to agree to a reasonable "not to exceed" cap for all fees and expenses for claims administration work.

B.      Calculation of Payment Amounts for Each FLSA Collective Member.

(i)      Within five business days of the Effective Date, Defendant will provide an excel spreadsheet to Plaintiffs' Counsel and the Settlement Administrator, containing a list of all 68 FLSA Collective Members, job location (city/state) as an I/DD Care Coordinator, social security number, last known mailing address, and last known phone number.  Also within five business days of the Effective Date, Plaintiffs' Counsel will provide a copy of the approved Settlement Agreement, including an electronic copy of the Spreadsheet, to the Settlement Administrator.  The Settlement Administrator will be bound by the Court's Joint Confidentiality Order (ECF No. 49) and Plaintiffs' Counsel shall be responsible for compliance with paragraph 7.b. of the Joint Confidentiality Order. The Parties shall provide the Settlement Administrator with all necessary cooperation, including (without limitation) the execution of all documents necessary to administer the Settlement.   Defendant will provide any other information to the Settlement Administrator necessary to enable it to perform the calculations described in paragraphs 2(A)–(B) and to obtain current contact information.

(ii)      Within ten business days of receipt of the Spreadsheet and any other information identified in the previous subparagraph, the Settlement Administrator shall calculate the settlement allocations pursuant to the formulas provided in paragraphs 2(A)–(B) of this Agreement, and the Settlement Administrator shall provide the

Page 13 of 20

DocuSign Envelope ID: ED9CE899-33EF-400C-8A18-E7D07B18EBA8

calculations to Plaintiffs' Counsel and Defendant's Counsel. Plaintiffs' Counsel and Defendant's Counsel will review the calculations for accuracy and cooperate in good faith to resolve any calculation errors within five days of receipt of the calculations from the Settlement Administrator.

      C.    <u>Funding the Settlement and Payment of Attorneys' Fees</u>. Within fourteen days of the Effective Date, Defendant shall wire the total amount of the Gross Settlement Fund to the Settlement Administrator. Within five days of receipt of the Gross Settlement Fund, the Settlement Administrator shall wire the Attorneys' Fees and Costs to Plaintiffs' Counsel. The Settlement Administrator will issue Plaintiffs' Counsel one or more IRS Forms 1099 for the attorneys' fees and costs paid under this Agreement.

      D.    <u>Distribution of Settlement Payments</u>. As soon as practicable and pursuant to the settlement allocations calculated in accordance with the formulas in paragraphs 2(A)–(C) of this Agreement and the calculations performed pursuant to paragraphs 6(B) of this Agreement, the Settlement Administrator shall issue the settlement checks (including service payment check) to the Named Plaintiff and the FLSA Collective Members.

      E.    <u>Undeliverable Settlement Materials</u>. If materials sent to a FLSA Collective Member are returned as undeliverable, the Settlement Administrator shall promptly undertake reasonable steps to determine the FLSA Collective Member's current address and, if an additional address is located, to send the materials to the updated address.

DocuSign Envelope ID: ED9CE899-33EF-400C-8A18-E7D07B18EBA8

F.    Unclaimed Monies.    Checks to FLSA Collective Members shall remain negotiable for 6 months.  FLSA Collective Members who do not cash their checks within six months of issuance will have their checks cancelled and their check amounts sent to a state unclaimed property division.

7.    **Tax Treatment of Payments.**

A.    Tax Allocation.  For individual settlement allocations as set forth in Paragraph 2(A)-2(B) above, fifty percent (50%) of the amount(s) paid to each FLSA Collective Member under this Agreement shall be reported by the Settlement Administrator as wages to the appropriate taxing authorities on a Form W-2 issued to the FLSA Collective Member with his or her taxpayer identification number, and shall be subject to deductions for applicable taxes and withholdings as required by federal, state, and local law.  The remaining fifty percent (50%) of the amount(s) paid to each FLSA Collective Member will be allocated to liquidated damages, interest, and/or penalties and reported by the Settlement Administrator as non-wage income to the appropriate taxing authorities on a Form 1099 issued to the FLSA Collective Member.  Service payments will be treated as non-wage income and reported by the Settlement Administrator to the appropriate taxing authorities on a Form 1099 issued to the FLSA Class Member.

B.    Issuance of Tax Forms.    The Settlement Administrator will be responsible for issuing the appropriate W-2 and 1099 forms, and its fees and expenses in doing so shall be considered "Administrative Costs" under paragraph 1(A) of this

Page 15 of 20

Agreement. The Settlement Administrator will notify Defendant of its employer portion of payroll taxes, which are exclusively the responsibility of Defendant and shall be paid by Defendant separately from and in addition to the Gross Settlement Fund.

        C.      <u>Indemnification</u>. The Releasing Parties agree to indemnify and hold Cardinal harmless from any liability it may incur relating to a claim by any taxing authority that taxes or other withholdings should have been paid by the Releasing Parties on any part of the sum to be paid under this Agreement.

     **8.**     **<u>Court Retains Jurisdiction To Enforce Agreement</u>**. The Court shall retain jurisdiction with respect to the implementation and enforcement of the monetary terms of the Agreement, to the extent permitted by law, and all Parties submit to the jurisdiction of the Court only for purposes of implementing and enforcing the monetary terms of the Settlement embodied in the Agreement. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

     **9.**     **<u>Cooperation Clause</u>**. The Parties agree to cooperate in good faith to effectuate the Settlement of the Lawsuit, including securing the Court's approval of the Agreement/dismissal of the Lawsuit, assisting with the administration of the Settlement in accordance with the terms of this Agreement, and obtaining a final judgment.

     **10.**     **<u>Severability</u>**. Should any clause, sentence, provision, paragraph, or part of this Agreement be adjudged by any court of competent jurisdiction, or be held by any other competent governmental authority having jurisdiction, to be illegal, invalid, or

unenforceable, such judgment or holding shall not affect, impair, or invalidate the remainder of this Agreement, but shall be confined in its operation to the clause, sentence, provision, paragraph, or part of the Agreement directly involved, and the remainder of the Agreement shall remain in full force and effect.

11. **No Waiver**. The failure to enforce at any time, or for any period of time, any one or more of the terms of this Agreement shall not be a waiver of such terms or conditions. Moreover, it shall not be a waiver of such party's right thereafter to enforce each and every term and condition of this Agreement.

12. **Authority**. Each signatory on behalf of the FLSA Collective Members, the Named Plaintiff, and Defendant represents and warrants that such party has full authority and power to make the releases and agreements contained in this Agreement on behalf of all FLSA Collective Members. Each signatory further represents and warrants that such party has not assigned, encumbered, or in any manner transferred all or a portion of the Released Claims.

13. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by electronic means will constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. Signatures of the

Page 17 of 20

Parties transmitted by electronic means will be deemed to be their original signatures for any purpose whatsoever.

    **14.**    <u>Notice</u>. Where any provision of this Agreement requires notice to a Party, such notice shall be sent to the following:

        A.    <u>FLSA Collective Member and the Named Plaintiff</u>. By regular mail to the last-known addresses Cardinal has on file for the respective FLSA Collective Member or the Named Plaintiff, with a copy by regular mail and email to Plaintiffs' counsel.

        B.    <u>Cardinal</u>. By regular mail to the Office of the General Counsel at 550 S. Caldwell St., Suite 1500, Charlotte, NC 28202, with a copy by regular mail and email to Nelson Mullins Riley & Scarborough LLP, Attn. Debbie Whittle Durban, 1320 Main Street, 17th Floor, Columbia, SC 29201.

    **15.**    **No Adverse Construction**. The Parties acknowledge that this Agreement has been prepared with the option of obtaining advice from counsel. In the event any part of this Agreement is found to be ambiguous, such ambiguity shall not be construed against any Party.

[Remainder of page intentionally blank.]

Page 18 of 20

**Cardinal Innovations Healthcare Solutions**

Date: _____     By: _____

Printed Name: _____

Title: _____

**On Behalf of the FLSA Collective**

Date: 8/20/2018 8:42:48 PM PDT     By: *Molly Kirkpatrick* _____

Printed Name: Molly Kirkpatrick

**Reviewed and approved as to form by counsel:**

**DAVIS GEORGE MOOK LLC**

Date: 8/20/2018 7:12:29 AM PDT     By: *Tracey George* _____

Printed Name: Tracey F. George

*Attorney for Plaintiff and FLSA Collective Members*

**STRIANESE HUCKERT, LLP**

Date: 8/20/2018 7:16:46 AM PDT     By: *Christopher R. Strianese* _____

Printed Name: Christopher R, Strianese

*Attorney for Plaintiff and FLSA Collective Members*

NELSON MULLINS RILEY & SCARBOROUGH LLP

Date: _____     By: _____
                            Printed Name:  Debbie Whittle Durban
                            *Attorney for Defendant*

Page 20 of 20

**Cardinal Innovations Healthcare Solutions**

Date: _8/22/18_    By: _Charles C. Sutton_

Printed Name: _CHARLES G. SUTTON_

Title: _CEO_


**On Behalf of the FLSA Collective**

Date: _____    By: _____
                         Printed Name:  Molly Kirkpatrick


Reviewed and approved as to form by counsel:


**DAVIS GEORGE MOOK LLC**

Date: _____    By: _____
                         Printed Name:  Tracey F. George
                         *Attorney for Plaintiff and FLSA Collective Members*


**STRIANESE HUCKERT, LLP**

Date: _____    By: _____
                         Printed Name:  Christopher R. Strianese
                         *Attorney for Plaintiff and FLSA Collective Members*


Page 19 of 20

NELSON MULLINS RILEY & SCARBOROUGH LLP

Date: 8/29/18

By: _Debbie Whittle Durban_

Printed Name:  Debbie Whittle Durban
*Attorney for Defendant*

Page 20 of 20