IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MOLLY KIRKPATRICK, on )
Behalf of Herself and All )
Others Similarly Situated, )
)
Plaintiffs, )
)
v. ) 1:16-CV-01088
)
CARDINAL INNOVATIONS )
HEALTHCARE SOLUTIONS, )
)
Defendant. )
)

**MEMORANDUM ORDER**

THOMAS D. SCHROEDER, Chief Judge.

This action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for unpaid overtime wages is before the court on Plaintiff's Unopposed Motion to Approve the FLSA Settlement Agreement. (Doc. 78.) For the reasons that follow, the motion will be granted.

**I. SETTLEMENT**

Under § 216(b), when an action is brought by an employee against his employer to recover back wages, the proposed settlement must be presented to the district court for review and determination that the settlement is fair and reasonable. Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353-54 (11th Cir. 1982).

To approve an FLSA settlement, the court must determine

whether it is a fair and reasonable compromise of disputed claims and issues arising from a *bona fide* dispute raised pursuant to the FLSA. See id. at 1355; Taylor v. Progress Energy, Inc., 493 F.3d 454, 460 (4th Cir. 2007), superseded on other grounds as recognized by Whiting v. The Johns Hopkins Hosp., 416 F. App'x 312, 316 (4th Cir. 2011).

### A. *Bona Fide* Dispute

When deciding whether there is a *bona fide* dispute as to a defendant's liability under the FLSA, courts consider the pleadings and the proposed settlement agreement. Duprey v. Scotts Co. LLC, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (citing Lomascolo v. Parsons Brinckerhoff, Inc., No. 1:08cv1310, 2009 WL 3094955, at *16-17 (E.D. Va. Sept. 28, 2009)). "A bona fide dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial." Hall v. Higher One Machs., Inc., No. 5-15-CV-670-F, 2016 WL 5416582, at *6 (E.D.N.C. Sept. 26, 2016) (citing Lynn's Food Stores, 679 F.2d at 1534). The FLSA claims at issue in this case constitute a *bona fide* dispute. The parties have engaged in extensive discovery and motion practice, and they have engaged in preliminary direct negotiations and mediation prior to reaching an agreement. (Doc. 78 at 8-9.) There were serious questions of fact and law at issue. (Id. at 10-11.) Therefore, the settlement was the product of contested litigation to resolve

2

a *bona fide* dispute.

## B.  Fairness and Reasonableness

Although the Fourth Circuit has not addressed directly the relevant factors the court should consider when determining whether a FLSA settlement is fair and reasonable, district courts within the circuit have generally considered the fairness factors a court would consider under Federal Rule of Civil Procedure 23(e). See Hoffman v. First Student, Inc., No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010).  For example, some courts have cited the following factors for consideration:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits and (6) the amount of the settlement in relation to the potential recovery.

Hargrove v. Ryla Teleservices, Inc., No. 2:11cv344, 2013 WL 1897027, at *2 (E.D. Va. 2013)(citing Lomascolo, 2009 WL 3094955, at *10).  "There is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." Lomascolo, 2009 WL 3094955, at *10 (quoting Camp v. Progressive Corp., Nos. 01-2680, 03-2507, 2004 WL 2149079, at *5 (E.D. La. Sept. 23,

3

2004)).

The settlement agreement provides that Defendant will pay $748,527.08 to the Gross Settlement Fund and that the Net Settlement Fund (which is the Gross Settlement Fund minus Attorneys' Fees and Costs, Service Payment, and Administrative Costs) will be divided pro rata amongst the FLSA collective members based on a points system accounting for each member's average weekly salary and number of FLSA work weeks. (Doc. 78 at 5.) The settlement provides that FLSA collective members will receive payment for approximately 8 hours of overtime per week. (Id. at 11.)

In considering the relevant factors, the court finds the following: (1) the parties have engaged in significant discovery (including interviewing employees, analyzing pay and time records, reviewing records, and serving and responding to written discovery) (id. at 8; Doc. 78-2 ¶¶ 16-19; Doc. 78-3 ¶¶ 13-16); (2) the stage of the proceedings and the complexity, expense, and likely duration of continued litigation favor approving the settlement; (3) there is an absence of any collusion or fraud in the settlement; (4) Plaintiff's counsel is experienced in such cases, having litigated prior FLSA cases on behalf of other employees (Doc. 78-2 ¶¶ 44-45; Doc. 78-3 ¶¶ 40-41); and (5) collective counsel urges the court to approve the settlement as fair and reasonable. The court has also considered the probability

4

of Plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery. The proposed settlement appears to be the product of arms-length bargaining between experienced collective counsel and experienced defense counsel, who have independently evaluated the likelihood of prevailing on their claims and defenses. Accordingly, the court grants final approval to the settlement.

## II. ATTORNEYS' FEES AND COSTS

Under the FLSA, the court is authorized to award "a reasonable attorney's fee to be paid by the defendant, and costs of the action," in addition to any judgment awarded to the plaintiff. 29 U.S.C. § 216(b); see Poulin v. Gen. Dynamics Shared Res., Inc., No. 3:09-CV-00058, 2010 WL 1813497, at *3-4 (W.D. Va. May 5, 2010) ("[T]he language of the FLSA contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs[]' . . . ." (quoting Maddrix v. Dize, 153 F.2d 274, 275-76 (4th Cir. 1946))). The Fourth Circuit generally considers twelve factors in judging the reasonableness of an award of attorneys' fees in FLSA cases:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time

5

> limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the twelve factors set forth in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)), superseded on other grounds as recognized in Knapp v. Americredit Fin. Servs., 245 F. Supp. 2d 841, 848 (S.D. W. Va. 2003) and In re Robinson, 368 B.R. 492, 498 (Bankr. E.D. Va. 2007).[1]

There are two primary methods for calculating attorneys' fees in the Fourth Circuit: the percentage of the fund method and the lodestar method. Phillips v. Triad Guaranty Inc., No. 1:09cv71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016); Hall, 2016 WL 5416582, at *7. "[T]he percentage of fund method provides that the court award attorneys' fees as a percentage of the common

---

[1] These standards have been applied more recently in an unreported FLSA case, Jackson v. Estelle's Place, LLC, 391 F. App'x 239, 243 (4th Cir. 2010), which, although not precedential, is nevertheless entitled to the persuasiveness of its reasoning. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

6

fund," while "[t]he lodestar method requires the court to determine the hours reasonably expended by counsel that created, protected, or preserved the fund[,] then to multiply that figure by a reasonable hourly rate."  Phillips, 2016 WL 2636289, at *2 (alteration in original) (quotation marks omitted).

In this case, Plaintiff seeks attorneys' fees based on the percentage of the fund method. (Doc. 78 at 14–17.) To determine whether the fees sought under the percentage of the fund method are reasonable, the lodestar may be used as a cross-check, as well as the twelve factors from Barber,[2] 577 F.2d at 226 n.28.[3]

---

[2] The twelve factors are referred to as both the "Johnson factors" and the "Barber factors" by courts in the Fourth Circuit. See, e.g., Phillips, 2016 WL 2636289, at *3–5 (referring to the twelve factors as "the Barber factors"); Denton v. PennyMac Loan Servs., LLC, 252 F. Supp. 3d 504, 511 (E.D. Va. 2017) (referring to the twelve factors as the "Johnson factors"); Dodeka, L.L.C. v. AmrolDavis, No. 7:10-cv-17-D, 2010 WL 3239117, at *1 (E.D.N.C. Aug. 16, 2010) (referring to the twelve factors as the "Johnson/Barber factors").

[3] Courts within the Fourth Circuit have used both the factors from Barber and different factors from In re Cendant Corp. PRIDES Litig., 243 F.3d 722 (3d Cir. 2001). Phillips, 2016 WL 2636289 at *3–4. "The Fourth Circuit has not yet identified factors for district courts to apply when using the 'percentage of recovery' method." Id., at *3 (quoting Boyd v. Coventry Health Care Inc., 299 F.R.D. 451, 462 (D. M.D. 2014)). Some district courts within the Fourth Circuit have explained that the In re Cendant factors are more appropriate than the Barber factors in percentage of the fund cases, while other district courts in this circuit have decided that the Barber factors better apply to the reasonableness analysis. Compare Loudermilk Serv., Inc. v. Marathon Petroleum Co. LLC, 623 F. Supp. 2d 713, 717–18 (S.D.W. Va. 2009) with Phillips, 2016 WL 2636289 at *4. Because the Fourth Circuit has not decided which factors should be applied to percentage of the fund cases, cases within the Middle District of North Carolina have applied the Barber factors in percentage of the fund cases, and Plaintiff's memorandum in support of

7

Phillips, 2016 WL 2636289, at *2–3; Kirven v. Central States Health & Life Co. of Omaha, No. 3:11-2149-MBS, 2015 WL 1314086, at *12 (D.S.C. Mar. 23, 2015) (collecting district court cases within the Fourth Circuit that use the lodestar method as a cross-check to ensure that the percentage of the fund method award is fair and reasonable).

The parties have agreed that Plaintiff's counsel will receive $250,000, equal to 33.39 percent of the Gross Settlement Fund, as attorneys' fees, plus reimbursement of their costs and expenses of $10,827. (Doc. 78 at 15; Doc. 78-1 at 9.) "In considering awards in similar cases, courts look to cases of similar size, rather than similar subject matter." Boyd v. Coventry Health Care Inc., 299 F.R.D. 451, 464 (D. Md. 2014). The requested 33.39 percent award is within the range of percentages that have been approved in other cases in this circuit. See id. ("Attorneys' fees awarded under the 'percentage of recovery' method are generally between twenty-five (25) and thirty (30) percent of the fund."); Phillips, 2016 WL 2636289, at *9 (awarding attorneys' fees of 30 percent of the settlement amount in a percentage of the fund case); cf. Kruger v. Novant Health, Inc., No. 1:14cv208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) (noting that "courts have found that a one-third

---

the motion to approve the settlement applies the Barber factors, the court will do so to assess reasonableness in this case.

8

fee is consistent with the market rate in a complex ERISA 401(k) fee case" (quotation marks omitted)).

In considering the relevant Barber factors, the court finds the following: (1) the case required collective counsel to expend significant time and labor, as collective counsel invested over 870 hours in litigating the claims in this case for more than two years (Doc. 78 at 17); (2) the novelty and difficulty of the questions raised weighs in favor of approving the fee because collective counsel had to address procedurally and substantively complex FLSA issues, including the applicability of the learned profession exemption to collective members (an issue Plaintiff's counsel characterizes as being addressed by "little caselaw" in the Fourth Circuit) (id. at 20); (3) the skill required to properly perform the legal services rendered weighs in favor of approving the fee because FLSA collective actions involve law which changes regularly due to growing jurisprudence across the country (id. at 21); (4) the attorneys' opportunity costs in pressing the instant litigation weigh in favor of approving the fee because the significant involvement in time reduced collective counsel's ability to take on additional cases during the course of this litigation, with counsel turning down other potentially remunerative work (id.); (5) collective counsel's customary fee for like work is a 40 percent contingency fee, though collective counsel agreed to seek only a one-third contingency fee with this

9

settlement agreement, so the customary fee for like work factor weighs in favor of approving the settlement (id. at 22); see Smith v. Krispy Kreme Doughnut Corp., No. 1:05cv00187, 2007 WL 119157, at *2 (M.D.N.C. Jan 10, 2007) ("In this jurisdiction, contingent fees of one-third are common."); (6) the attorney's expectations at the outset of the litigation weigh in favor of approving the fee because collective counsel undertook the case on a 40 percent contingency fee contract, thereby taking the risk of obtaining nothing if no recovery was obtained for Plaintiff or the collective (Doc. 78 at 22); (7) there were no time limitations imposed by the client or circumstances in this case, so the seventh factor is not applicable to this case (id.); (8) the results obtained weigh in favor of approving the fee, because counsel obtained a good result for the collective (id. at 22); (9) the experience, reputation, and ability of the attorneys weigh in favor of approving the fee, because collective counsel have significant experience litigating FLSA wage and hour cases across the country — one lawyer has more than 18 years of legal experience and has served as class counsel in dozens of FLSA collective actions (Doc. 78-3 ¶ 40), and the other has more than 13 years of legal experience and has served as class counsel in numerous FLSA collective action cases in this district (Doc. 78-2 ¶ 44) (Doc. 78 at 23); (10) while the undesirability of the case within the legal community in which the suit arose is not a significant factor in this case, Plaintiff's

10

counsel note that "many attorneys are reluctant to take on cases such as this where there is a very real risk of no recovery and the time commitment is significant" (Doc. 78 at 23), which provides some slight support in favor of approving the settlement; (11) the nature and length of the professional relationship between attorney and client is not material in this case[4] (Doc. 78 at 23); (12) the attorneys' fees award in similar cases factor weighs in favor of approving the settlement because fee awards of one-third of the common fund are common in FLSA cases (Doc. 78 at 23); see, e.g., DeWitt v. Darlington County, S.C., No. 4:11-cv-00740-RBH, 2013 WL 6408371, at *9 (collecting FLSA cases where courts approved attorney fees of one-third of the recovery in contingency cases).

"A lodestar cross-check of the fees request confirms its reasonableness." Phillips, 2016 WL 2636289, at *7. "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." Id. (quoting Boyd, 299 F.R.D. at 467.) Although Plaintiff's counsel's description of legal work is not as detailed

---

[4] "The meaning of this factor, however, and its effect on the calculation of a reasonable fee has always been unclear. . . . Courts applying the Johnson factors typically state that this particular standard is irrelevant or immaterial." Bruner v. Sprint/United Mgmt. Co., Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *9 (D. Kan. July 14, 2009) (citations omitted).

11

as in other cases, it is sufficient for this court's review to be a meaningful cross-check.[5]  Id.; see (Doc. 78-1 through 4). Collective counsel spent a total of 870.8 hours on this litigation. (Doc. 78-4.)  Bridget Mohn, a paralegal, spent 38 hours on this case at a rate of $125 an hour, Tracey George spent 511.1 hours on this case at a rate of $575 an hour, and Christopher Strianese spent 321.7 hours on this case at a rate of $400 an hour.  (Id.) Counsel's total lodestar fee amounted to $427,312.50, but counsel is only requesting $250,000 in fees, which is a 41 percent reduction of the lodestar fee and amounts to a blended hourly rate of approximately $300 for the lawyers' time.  (Id.)  Counsel's hourly rates fall within what the court observes to be the

---

[5] When counsel submits only "the total hours spent by each attorney and other professional[s], with no specification of date or task[,]" the court lacks any "backup detail" which makes it "impossible to assess duplication of effort or unproductive time."  Boyd, 299 F.R.D. at 468; Phillips, 2016 WL 2636289, at *7.  Here, counsel submitted the hourly breakdown of tasks but provided generic categorical specifications of the task (such as "case management," "client meetings/call," and "correspondence") and no date for the tasks.  This lack of specification makes it difficult for the court to assess duplication of effort or unproductive time but, because Plaintiff's counsel is seeking less than its lodestar fees and reduced the lodestar fee they are seeking by 41 percent, this significant reduction lessens the court's need to ascertain any duplicative efforts in determining whether the lodestar is reasonable.  See Phillips, 2016 WL 2636289, at * 8 (finding that even though "the narrative description of the work of the attorneys suggests that there may have been some duplicative work," the number of hours provided by counsel was permissible because, since the recovery was only 30 percent of the settlement amount, it was less than what counsel might be paid by a client paying by the hour even if those hours were discounted).

12

prevailing market rates in the relevant community for this type of work.  See, e.g., Personhuballah v. Alcorn, 239 F. Supp. 3d 929, 948 (E.D. Va. 2017) (approving rates as follow: $575 for senior partners, $390 to $410 for senior associates, and $310 to 345 for junior associates), vacated and remanded on other grounds, Brat v. Personhuballah, 883 F.3d 475 (4th Cir. 2018).

Counsel's request for $250,000, 33.39 percent of the settlement agreement, represents a lodestar multiplier of approximately 0.58.  "Courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee."  Phillips, 2016 WL 2636289 at *8 (citing Jones v. Dominion Resources Servs., Inc., 601 F. Supp. 2d 756, 766 (S.D.W. Va. 2009)) (describing a lodestar multiplier of approximately 0.35 as "so far below those generally accepted as demonstrating reasonableness"); see In re Neustar, Inc. Sec. Litig., No. 1:14cv885, 2015 WL 8484438, (E.D. Va. Dec. 8, 2015) at *10 (describing a lodestar multiplier of 0.36 as "comfortably below the range of multipliers other courts have found to be reasonable"); Domonoske v. Bank of America, N.A., 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) (collecting cases and holding that a 1.8 lodestar multiplier is "well within the normal range of lodestar multipliers").  Since collective counsel's lodestar multiplier is far below those generally accepted, their requested fees are reasonable.

13

**III. SERVICE AWARD**

The parties' settlement agreement provides for a service payment of $10,000 for Plaintiff Molly Kirkpatrick. (Doc. 78 at 12.) This service payment constitutes approximately 1.3 percent of the gross settlement fund. "Courts around the country have approved substantial [service] payments in FLSA collective actions and other employment-related class actions." DeWitt, 2013 WL 6408371, at *14 (collecting cases); see Edelen v. Am. Residential Servs., LLC, No. DKC 11-2744, 2013 WL 3816986, at * 16 (D. Md. July 22, 2013) ("Incentive payments to class representatives have been awarded in both FLSA collective actions and Rule 23 class actions.").[6] Service payments for named Plaintiffs "compensate Plaintiffs for their additional efforts, risks, and hardships they have undertaken as class representatives on behalf of the group in filing and prosecuting the action." Dewitt, 2013 WL 6408371, at *14. "To determine whether [a service] payment is warranted, the court should consider the actions the plaintiff has taken to

---

[6] But see Stone v. SRA Int'l, Inc., No. 2:14cv209, 2015 WL 12748271 (E.D. Va. Mar. 20, 2015) (noting that "a collective action under the FLSA is different from a Rule 23 class action. . . . Thus, even when an FLSA plaintiff demonstrates that there are other plaintiffs similarly situated to him, he has no right to represent them. . . . Because there is no truly 'representative plaintiff' in a collective action, negotiated incentive payments to the first named or lead plaintiffs in a collective action are scrutinized more closely[,]" but approving service payments in the amount of $12,500 each for the two named plaintiffs (citations omitted)).

14

protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Kirven, 2015 WL 1314086, at * 13.

Plaintiff Molly Kirkpatrick worked with collective counsel for approximately two-and-a-half years to pursue these claims on behalf of the collective members and identified and contacted initial collective members. (Doc. 78 at 12; Doc. 78-2 ¶¶ 28-29; Doc. 78-3 ¶¶ 25-26.) Kirkpatrick also provided evidence for the court in support of the conditional certification motion, assisted counsel in discovery to prepare for the mediation, responded to written discovery requests, served as a contact person for collective members requesting updates and information about the status of litigation, and educated collective counsel on Defendant's documents, policies, and practices. (Doc. 78 at 12-13; Doc. 78-2 ¶¶ 30-31; Doc. 78-3 ¶¶ 26-28.) The declarations of Strianese and George state that without Kirkpatrick putting her name on the lawsuit and her assistance, "it is unlikely that any recovery [to the collective] would have been as beneficial to the group." (Doc 78 at 12-13; Doc. 78-2 ¶ 32; Doc. 78-3 ¶ 29.) These declarations also estimate that Kirkpatrick's work as named Plaintiff required over 100 hours of her time. (Id.) Several factors demonstrate that the $10,000 service award is reasonable: Kirkpatrick's role in initiating this lawsuit; the time and effort

15

she devoted to achieving a favorable resolution; her total level of involvement in the case; the fact that no objection has been made to the proposed award; and the fact that the amount in question constitutes less than one and one-half percent of the total settlement fund. The award will therefore be approved. See Leigh v. Bottling Grp., LLC, No. DKC 10-0218, 2012 WL 460468, at *7 (D. Md. 2012) (approving a service award that was less than one and one-half percent of the total settlement fund in an FLSA collective action).

**IV. CONCLUSION**

For these reasons, therefore,

IT IS ORDERED that Plaintiff's Unopposed Motion To Approve FLSA Settlement Agreement (Doc. 78) is GRANTED.

IT IS FURTHER ORDERED that the Settlement Administrator is directed to issue settlement payments to the FLSA collective members in accordance with the terms of the Settlement Agreement.

IT IS FURTHER ORDERED that the payment of attorneys' fees, costs, and service award requested in Doc. 78 shall be made in accordance with the terms of the Settlement Agreement (Doc. 78-1).

IT IS FURTHER ORDERED that this court retains jurisdiction over this case for purposes of resolving any issues pertaining to settlement administration.

16

IT IS FURTHER ORDERED that the above-captioned action is DISMISSED WITH PREJUDICE.

                                                   /s/   Thomas D. Schroeder
                                                   United States District Judge

December 18, 2018